UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BOLES,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                  Case No. 1:07 CV 277

GARY LEWIS, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on <u>Defendant Migliorino's Motion to Dismiss Plaintiff's Complaint</u>. (Dkt. #93). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **denied**.

**BACKGROUND**

        The following allegations are contained in Plaintiff's complaint. (Dkt. #1). In 2001, Plaintiff began receiving from prison officials a low sodium diet. (Dkt. #1 at ¶ 24). The medical details, pursuant to which Plaintiff received a low sodium diet, were regularly renewed. (Dkt. #1 at ¶¶ 26-28). On May 13, 2004, Plaintiff transferred from the Brooks Correctional Facility to the Ionia Correctional Facility. (Dkt. #1 at ¶¶ 27, 29). Prior to being transferred from the Brooks facility, Plaintiff's diet detail had been renewed through July 20, 2004. (Dkt. #1 at ¶ 28).

        When Plaintiff arrived at the Ionia facility he provided a nurse with a copy of his diet detail. (Dkt. #1 at ¶ 29-30). The nurse instructed Plaintiff to "take the detail to food service when it is

time to eat and food service will honor [the] diet detail." (Dkt. #1 at ¶ 30). Plaintiff did as instructed and began receiving low sodium meals. (Dkt. #1 at ¶¶ 31-33). Plaintiff received low sodium meals through the noon meal on May 18, 2004. (Dkt. #1 at ¶ 33). When Plaintiff received his evening meal on May 18, 2004, he was informed that Defendant Lewis had instructed food services "not to prepare any more diet trays for Plaintiff." (Dkt. #1 at ¶¶ 33-34).

When Plaintiff asked Defendant Lewis why "he was disregarding a valid detail from the doctor," Lewis responded that "he [would] not honor a detail from another facility." (Dkt. #1 at ¶ 36). Plaintiff stated that being deprived of low sodium meals could cause him to experience "harm," to which Defendant Lewis "told the Plaintiff to file a grievance." (Dkt. #1 at ¶ 37). Plaintiff subsequently filed a grievance against Defendant Lewis for refusing to honor his low sodium diet detail. (Dkt. #1 at ¶ 38). On May 28, 2004, Plaintiff was informed that he could again receive low sodium meals. (Dkt. #1 at ¶ 46). During the ten days that Plaintiff was deprived of his prescribed low sodium diet, he "suffered excruciating headaches, blurry vision, and dizziness from eating the food off the regular line and by the fifth day he had to stop eating much of the food to ease the pain." (Dkt. #1 at ¶ 51). Plaintiff also lost ten pounds during this ten day period, as his weight dropped from 224 pounds to 212 pounds. (Dkt. #1 at ¶ 50).

On December 22, 2004, Plaintiff received a meal containing "processed turkey," contrary to his medical detail for a low sodium diet. (Dkt. #1 at ¶ 59). The processed turkey was placed on Plaintiff's food tray at the direction of Defendant Case. (Dkt. #1 at ¶ 59). Plaintiff filed a grievance regarding this incident three days later. (Dkt. #1 at ¶ 59). On January 11, 2005, Defendant Case told inmate Dwight Brown that "he was fed up with" Plaintiff "complaining about his special meals." (Dkt. #1 at ¶¶ 64-65). Defendant Case told Brown that "if [Plaintiff] come[s] to lunch today with his

complaints he is going to write a ticket and get it over with." (Dkt. #1 at ¶ 66). Later that day, Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation. (Dkt. #1 at ¶¶ 63, 68-70). Defendant Case charged Plaintiff with this violation in retaliation for Plaintiff having filed a grievance against Case for serving Plaintiff processed turkey on December 22, 2004. (Dkt. #1 at ¶¶ 63, 74-76).

On February 10, 2005, Plaintiff was served meat loaf, which he subsequently gave to another prisoner. (Dkt. #1 at ¶ 79). Defendant Case questioned Plaintiff "about giving his meat loaf to another prisoner." (Dkt. #1 at ¶¶ 77, 80). Plaintiff responded that "he was not prohibit[ed] from giving a prisoner at the same table he is at the meat loaf he was not going to eat." (Dkt. #1 at ¶ 80). Defendant Case then discussed the matter with Defendant Christiansen. (Dkt. #1 at ¶¶ 77, 81). Later that day, Defendant Christiansen "issued a memo to Health Unit Manager A. Karp requesting that the plaintiff be removed from his special diet tray for trading the chicken from his low sodium tray for apple cobbler from a regular tray." (Dkt. #1 at ¶ 78). Defendant Christiansen took this action in retaliation for Plaintiff having filed a grievance against Defendant Case. (Dkt. #1 at ¶¶ 88-90). On February 23, 2005, Defendant Migliorino discontinued Plaintiff's low sodium diet detail. (Dkt. #1 at ¶¶ 78, 83). As a result of being removed from his low sodium diet, Plaintiff suffered "elevated" blood pressure, "excruciating" headaches, "blurry" vision, "dizziness," and weight loss of seven pounds. (Dkt. #1 at ¶¶ 87, 95, 97). Plaintiff's low sodium diet detail was reinstated on March 15, 2005. (Dkt. #1 at ¶ 87).

On August 19, 2005, Plaintiff participated in a "telemedicine consultation" conducted by Dr. Hutchinson, the purpose of which was to "evaluate [Plaintiff's] candidacy for antiviral treatment for Hepatitis C." (Dkt. #1 at ¶ 99). The doctor determined that Plaintiff "qualified for treatment" which would begin in October 2005. (Dkt. #1 at ¶¶ 99-100). The doctor instructed Plaintiff that as part of this

treatment "he need[ed] to drink more than the normal amount of water." (Dkt. #1 at ¶ 100). Plaintiff "followed Dr. Hutchinson's instructions and found himself urinating frequently." (Dkt. #1 at ¶ 101).

From October 2005 through January 17, 2006, Plaintiff was allowed to go to the bathroom during prisoner count. (Dkt. #1 at ¶ 102). On January 18, 2006, Defendant Richardson modified policy such that Plaintiff was no longer permitted to use the bathroom until "count cleared." (Dkt. #1 at ¶¶ 103-04). As a result, Plaintiff was forced to "h[o]ld his urine in pain" while he waited for count to clear. (Dkt. #1 at ¶¶ 104-07). On January 20, 2006, Plaintiff approached prison officials to complain about this, resulting in Defendant Richardson issuing Plaintiff a major misconduct ticket for being "out of place." (Dkt. #1 at ¶¶ 105-08). Defendant Richardson issued this misconduct ticket in retaliation for Plaintiff having complained "about bathroom usage." (Dkt. #1 at ¶ 146).

Pursuant to this misconduct charge, Plaintiff met with Defendant Lowery. (Dkt. #1 at ¶ 205). Plaintiff provided Lowery with "his defense and written questions for his witnesses." (Dkt. #1 at ¶ 205). Defendant Lowery refused to submit written questions to two of Plaintiff's four witnesses. (Dkt. #1 at ¶ 205). According to Plaintiff, Defendant Lowery "intentionally failed to assist the plaintiff with his defense when refusing to gather and present critical evidence of material witnesses at the plaintiff's request." (Dkt. #1 at ¶¶ 206-22).

On January 21, 2006, Plaintiff asked Defendant Richardson if he could exit his cell to use the bathroom. (Dkt. #1 at ¶ 109). Defendant Richardson denied Plaintiff's request, informing him that he had to wait until count cleared. (Dkt. #1 at ¶ 109). Plaintiff was unable to wait and urinated on himself. (Dkt. #1 at ¶ 109). A similar incident occurred on January 22, 2006. (Dkt. #1 at ¶ 110). Plaintiff was informed that "he would be allowed to use the rest room during count if he obtained an accommodation from health care." (Dkt. #1 at ¶ 112). Plaintiff's attempt to obtain such an

accommodation was denied on the ground that he "did not have a medical need for continuous access to the rest room during count." (Dkt. #1 at ¶ 112). From January 23, 2006, through January 27, 2006, Plaintiff's requests to use the bathroom during count were denied and he was forced to either hold his urine, which caused him to experience pain, or urinate on himself. (Dkt. #1 at ¶ 115).

On or about January 30, 2006, Plaintiff was examined by Defendant Migliorino. (Dkt. #1 at ¶¶ 174-77). Plaintiff informed Dr. Migliorino that as a result of following Dr. Hutchinson's instructions to "drink more than the normal amount of water," he had to "urinate frequently." (Dkt. #1 at ¶ 179). Plaintiff asked Dr. Migliorino "for a plastic urine container or an accommodation to use [the] bathroom during count time." (Dkt. #1 at ¶ 179). Dr. Migliorino informed Plaintiff that "his problem was a custody issue" but that he would nonetheless "check it out." (Dkt. #1 at ¶ 180). The doctor concluded that Plaintiff "can use the bathroom right before count everyday and then use the bathroom immediately following count everyday and therefore you do not need a detail to use the bathroom at any time during count." (Dkt. #1 at ¶ 185).

On February 2, 2006, prison officials modified policy to permit inmates to use the bathroom "if it takes more than a half hour after count has been taken to clear count." (Dkt. #1 at ¶¶ 113-14, 117, 120). On February 6, 2006, Defendant Richardson refused to honor this policy change, forcing Plaintiff to urinate on himself. (Dkt. #1 at ¶¶ 118-21). Later that day prison officials "spoke with Richardson about clarification of bathroom usage." (Dkt. #1 at ¶ 122). Defendant Richardson nonetheless refused Plaintiff's requests to use the bathroom during count on four separate occasions between February 14, 2006, and February 24, 2006, causing Plaintiff "to experience unnecessary pain and suffering when being forced to hold his urine until count cleared, and urinating on himself." (Dkt. #1 at ¶¶ 129).

On February 28, 2006, Defendant Richardson allowed Plaintiff to use the bathroom, but then later falsely charged him with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 130). On March 1, 2006, Plaintiff exited his cell to ask Defendant Teft if he could use the bathroom. (Dkt. #1 at ¶ 137). Defendant Teft refused, forcing Plaintiff to urinate on himself. (Dkt. #1 at ¶ 137). Defendant Richardson charged Plaintiff with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 138). Richardson took this action in response to the change in policy regarding inmates' ability to use the bathroom if count did not clear within 30 minutes. (Dkt. #1 at ¶ 147). Plaintiff was found not guilty of this charge because another prison official had previously instructed Plaintiff that he could exit his cell during count to "seek permission to use the bathroom." (Dkt. #1 at ¶¶ 139-45).

Plaintiff initiated this action on March 19, 2007, asserting that Defendants violated his rights under the First and Eighth Amendments, as well as his right to substantive and procedural due process. (Dkt. #1). Defendant Migliorino now moves to dismiss Plaintiff's claims.

## **LEGAL STANDARD**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in Plaintiff's favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ANALYSIS

On or about January 30, 2006, Plaintiff was examined by Defendant Migliorino. During this examination, Plaintiff informed Migliorino that because he was drinking "more than the normal amount of water," as instructed by Dr. Hutchinson, he had to "urinate frequently." Accordingly, Plaintiff asked Dr. Migliorino "for a plastic urine container or an accommodation to use [the] bathroom during count time." The doctor denied Plaintiff's request, concluding that Plaintiff could simply use the bathroom immediately before and immediately after count. Plaintiff asserts that Defendant Migliorino's refusal to provide him with a medical detail to use the bathroom during count violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendant Migliorino contends that Plaintiff's claim must be dismissed for failure to state a claim on which relief may be granted.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Defendant Migliorino asserts that Plaintiff's claim against him must be dismissed because Plaintiff's allegations "amount to no more than a disagreement with prison policy, conduct which does not equate to deliberate indifference." In support of this position, Defendant Migliorino relies on *Simpson v. Overton*, 79 Fed. Appx. 117 (6th Cir., Oct. 23, 2003), and *Parter v. Valone*, 2006 WL 3086900 (E.D. Mich., Oct. 30, 2006). The Court finds this authority unpersuasive.

The former action was initiated by Arthur Simpson, an elderly prisoner who suffered from several medical impairments. *Simpson*, 79 Fed. Appx. at 118. As a result of the various medications he was prescribed, Simpson "urinate[d] frequently, as often as three to four times an hour." *Id.* This circumstance caused Simpson "great difficulty during head count." *Id.* at 118-19. Simpson alleged that he had once been provided a medical detail which permitted him to use the bathroom during count, but that due to a change in prison policy such details were "no longer given." *Id.* at 119. Simpson alleged that "prison regulations forbade him either to go to the bathroom during count without a detail, or to keep a urinal bottle in his cell." As a result, Simpson urinated on himself "during count on several occasions." Simpson filed a grievance concerning the matter that was referred to the

facility's Medical Director, Audberto Antonini, who offered Simpson a urinal bottle but denied his grievance. *Id.*

Plaintiff subsequently filed a § 1983 action against Antonini, as well as two other prison officials. *Id.* at 119-20. Simpson's claims against the two other prison officials were dismissed because their only involvement in the matter was that they denied Simpson's administrative appeals. *Id.* at 120. As for Plaintiff's claim against Antonini, the court concluded that Simpson had failed to state a claim for violation of his Eighth Amendment rights. Specifically, the court found that

> Simpson's grievance, and the substance of his complaint in this action, was not inadequate medical care but rather inhumane application of prison policy. He complains in essence that the policy, or the individuals enforcing it, failed to accommodate to his medically-caused need for bathroom access or some reasonable alternative. If Antonini had the power or authority to grant an exemption to the warden's policies, then Antonini's offer of a urinal would seemingly have resolved Simpson's grievance. If, as implied by Simpson's characterization of Antonini's offer as a 'sham,' Antonini could not grant an exemption, then Simpson sued the wrong official. Either way, Antonini could not have been deliberately indifferent.

*Id.* at 119-20.[1]

The present circumstance is easily distinguishable from that in the *Simpson* and *Parter* cases. Plaintiff has not alleged that Defendant Migliorino offered a resolution to Plaintiff's problem, but that such was precluded by prison policy. Plaintiff's complaint contains no allegation that there existed a prison policy which prevented Defendant Migliorino from either providing him with a plastic urine container or prescribing him a medical detail permitting him to use the bathroom during count. Plaintiff's claim against Defendant Migliorino is not premised upon an "inhumane application of prison

---

[1] As the *Parter* court recognized, the allegations asserted by Parter were "the same as the plaintiff in [the] *Simpson*" case, namely that prison policy prevented him from using the bathroom at particular times. *Parter*, 2006 WL 3086900 at *4. Because the *Parter* case constitutes non-binding authority, the analysis of which is indistinguishable from that articulated in *Simpson*, the Court finds it unnecessary to discuss this case in any detail.

policy," but is instead based on Plaintiff's assertion that Migliorino denied him necessary medical treatment.

As the United States Supreme Court has recognized, "a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation" *can* violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also*, *Tate v. Campbell*, 85 Fed. Appx. 413, 417 (6th Cir., Dec. 15, 2003) ("forcing a person in the custody or under the control of state authority to publicly soil themselves" may constitute an Eighth Amendment violation). Construing Plaintiff's complaint liberally and taking the allegations therein as true, the Court concludes that Plaintiff has asserted facts which, if proven, would entitle him to relief. Accordingly, the Court recommends that Defendant Migliorino's motion to dismiss be **denied**.

## CONCLUSION

As discussed herein, the Court recommends that Defendant Migliorino's Motion to Dismiss Plaintiff's Complaint, (dkt. #93), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: August 22, 2008                                /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge