UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT BOLES,

                Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                          Case No. 1:07 CV 277

GARY LEWIS, et al.,

                Defendants.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, (dkt. #55), and Defendants' Motion for Summary Judgment, (dkt. #58).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied** and that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint.  (Dkt. #1).  In 2001, Plaintiff began receiving from prison officials a low sodium diet.  (Dkt. #1 at ¶ 24).  The medical details, pursuant to which Plaintiff received a low sodium diet, were regularly renewed.  (Dkt. #1 at ¶¶ 26-28).  On May 13, 2004, Plaintiff transferred from the Brooks Correctional Facility to the Ionia Correctional Facility.  (Dkt. #1 at ¶¶ 27, 29).  Prior to being transferred from the Brooks facility, Plaintiff's diet detail had been renewed through July 20, 2004.  (Dkt. #1 at ¶ 28).

When Plaintiff arrived at the Ionia facility he provided a nurse with a copy of his diet detail. (Dkt. #1 at ¶ 29-30). The nurse instructed Plaintiff to "take the detail to food service when it is time to eat and food service will honor [the] diet detail." (Dkt. #1 at ¶ 30). Plaintiff did as instructed and began receiving low sodium meals. (Dkt. #1 at ¶¶ 31-33). Plaintiff received low sodium meals through the noon meal on May 18, 2004. (Dkt. #1 at ¶ 33). When Plaintiff received his evening meal on May 18, 2004, he was informed that Defendant Lewis had instructed food services "not to prepare any more diet trays for Plaintiff." (Dkt. #1 at ¶¶ 33-34).

When Plaintiff asked Defendant Lewis why "he was disregarding a valid detail from the doctor," Lewis responded that "he [would] not honor a detail from another facility." (Dkt. #1 at ¶ 36). Plaintiff stated that being deprived of low sodium meals could cause him to experience "harm," to which Defendant Lewis "told the Plaintiff to file a grievance." (Dkt. #1 at ¶ 37). Plaintiff subsequently filed a grievance against Defendant Lewis for refusing to honor his low sodium diet detail. (Dkt. #1 at ¶ 38). On May 28, 2004, Plaintiff was informed that he could again receive low sodium meals. (Dkt. #1 at ¶ 46). During the ten days that Plaintiff was deprived of his prescribed low sodium diet, he "suffered excruciating headaches, blurry vision, and dizziness from eating the food off the regular line and by the fifth day he had to stop eating much of the food to ease the pain." (Dkt. #1 at ¶ 51). Plaintiff also lost ten pounds during this ten day period, as his weight dropped from 224 pounds to 212 pounds. (Dkt. #1 at ¶ 50).

On December 22, 2004, Plaintiff received a meal containing "processed turkey," contrary to his medical detail for a low sodium diet. (Dkt. #1 at ¶ 59). The processed turkey was placed on Plaintiff's food tray at the direction of Defendant Case. (Dkt. #1 at ¶ 59). Plaintiff filed a grievance regarding this incident three days later. (Dkt. #1 at ¶ 59). On January 11, 2005, Defendant Case told

inmate Dwight Brown that "he was fed up with" Plaintiff "complaining about his special meals." (Dkt. #1 at ¶¶ 64-65). Defendant Case told Brown that "if [Plaintiff] come to lunch today with his complaints he is going to write a ticket and get it over with." (Dkt. #1 at ¶ 66). Later that day, Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation. (Dkt. #1 at ¶¶ 63, 68-70). Defendant Case charged Plaintiff with this violation in retaliation for Plaintiff having filed a grievance against Case for serving Plaintiff processed turkey on December 22, 2004. (Dkt. #1 at ¶¶ 63, 74-76).

On February 10, 2005, Plaintiff was served meat loaf, which he subsequently gave to another prisoner. (Dkt. #1 at ¶ 79). Defendant Case questioned Plaintiff "about giving his meat loaf to another prisoner." (Dkt. #1 at ¶¶ 77, 80). Plaintiff responded that "he was not prohibit[ed] from giving a prisoner at the same table he is at the meat loaf he was not going to eat." (Dkt. #1 at ¶ 80). Defendant Case then discussed the matter with Defendant Christiansen. (Dkt. #1 at ¶¶ 77, 81). Later that day, Defendant Christiansen "issued a memo to Health Unit Manager A. Karp requesting that the plaintiff be removed from his special diet tray for trading the chicken from his low sodium tray for apple cobbler from a regular tray." (Dkt. #1 at ¶ 78). Defendant Christiansen took this action in retaliation for Plaintiff having filed a grievance against Defendant Case. (Dkt. #1 at ¶¶ 88-90). On February 23, 2005, Defendant Migliorino discontinued Plaintiff's low sodium diet detail. (Dkt. #1 at ¶¶ 78, 83). As a result of being removed from his low sodium diet, Plaintiff suffered "elevated" blood pressure, "excruciating" headaches, "blurry" vision, "dizziness," and weight loss of seven pounds. (Dkt. #1 at ¶¶ 87, 95, 97). Plaintiff's low sodium diet detail was reinstated on March 15, 2005. (Dkt. #1 at ¶ 87).

On August 19, 2005, Plaintiff participated in a "telemedicine consultation" conducted by Dr. Hutchinson, the purpose of which was to "evaluate [Plaintiff's] candidacy for antiviral treatment for Hepatitis C." (Dkt. #1 at ¶ 99). The doctor determined that Plaintiff "qualified for treatment" which

would begin in October 2005.  (Dkt. #1 at ¶¶ 99-100).  The doctor instructed Plaintiff that as part of this treatment "he need[ed] to drink more than the normal amount of water."  (Dkt. #1 at ¶ 100).  Plaintiff "followed Dr. Hutchinson's instructions and found himself urinating frequently."  (Dkt. #1 at ¶ 101).

From October 2005 through January 17, 2006, Plaintiff was allowed to go to the bathroom during prisoner count.  (Dkt. #1 at ¶ 102).  On January 18, 2006, Defendant Richardson modified policy such that Plaintiff was no longer permitted to use the bathroom until "count cleared."  (Dkt. #1 at ¶¶ 103-04).  As a result, Plaintiff was forced to "h[o]ld his urine in pain" while he waited for count to clear.  (Dkt. #1 at ¶¶ 104-07).  On January 20, 2006, Plaintiff approached prison officials to complain about this, resulting in Defendant Richardson issuing Plaintiff a major misconduct ticket for being "out of place."  (Dkt. #1 at ¶¶ 105-08).  Defendant Richardson issued this misconduct ticket in retaliation for Plaintiff having complained "about bathroom usage."  (Dkt. #1 at ¶ 146).

Pursuant to this misconduct charge, Plaintiff met with Defendant Lowery.  (Dkt. #1 at ¶ 205).  Plaintiff provided Lowery with "his defense and written questions for his witnesses."  (Dkt. #1 at ¶ 205).  Defendant Lowery refused to submit written questions to two of Plaintiff's four witnesses, Dr. Hutchinson and ARUS Kelly.  (Dkt. #1 at ¶¶ 205, 234).  According to Plaintiff, Defendant Lowery "intentionally failed to assist the plaintiff with his defense when refusing to gather and present critical evidence of material witnesses at the plaintiff's request."  (Dkt. #1 at ¶¶ 206-22).

On January 21, 2006, Plaintiff asked Defendant Richardson if he could exit his cell to use the bathroom.  (Dkt. #1 at ¶ 109).  Defendant Richardson denied Plaintiff's request, informing him that he had to wait until count cleared.  (Dkt. #1 at ¶ 109).  Plaintiff was unable to wait and urinated on himself.  (Dkt. #1 at ¶ 109).  A similar incident occurred on January 22, 2006.  (Dkt. #1 at ¶ 110).  Plaintiff was informed that "he would be allowed to use the rest room during count if he obtained an

accommodation from health care." (Dkt. #1 at ¶ 112). Plaintiff's attempt to obtain such an accommodation was denied on the ground that he "did not have a medical need for continuous access to the rest room during count." (Dkt. #1 at ¶ 112). From January 23, 2006, through January 27, 2006, Plaintiff's requests to use the bathroom during count were denied and he was forced to either hold his urine, which caused him to experience pain, or urinate on himself. (Dkt. #1 at ¶ 115).

  On or about January 30, 2006, Plaintiff was examined by Defendant Migliorino. (Dkt. #1 at ¶¶ 174-77). Plaintiff informed Dr. Migliorino that as a result of following Dr. Hutchinson's instructions to "drink more than the normal amount of water," he had to "urinate frequently." (Dkt. #1 at ¶ 179). Plaintiff asked Dr. Migliorino "for a plastic urine container or an accommodation to use [the] bathroom during count time." (Dkt. #1 at ¶ 179). Dr. Migliorino informed Plaintiff that "his problem was a custody issue" but that he would nonetheless "check it out." (Dkt. #1 at ¶ 180). The doctor concluded that Plaintiff "can use the bathroom right before count everyday and then use the bathroom immediately following count everyday and therefore you do not need a detail to use the bathroom at any time during count." (Dkt. #1 at ¶ 185).

  On February 2, 2006, prison officials modified policy to permit inmates to use the bathroom "if it takes more than a half hour after count has been taken to clear count." (Dkt. #1 at ¶¶ 113-14, 117, 120). On February 6, 2006, Defendant Richardson refused to honor this policy change, forcing Plaintiff to urinate on himself. (Dkt. #1 at ¶¶ 118-21). Later that day prison officials "spoke with Richardson about clarification of bathroom usage." (Dkt. #1 at ¶ 122). Defendant Richardson nonetheless refused Plaintiff's requests to use the bathroom during count on four separate occasions between February 14, 2006, and February 24, 2006, causing Plaintiff "to experience unnecessary pain and suffering when being forced to hold his urine until count cleared, and urinating on himself." (Dkt.

#1 at ¶¶ 129).  Plaintiff asserts that on ten occasions between January 21, 2006, and February 24, 2006, he urinated on himself because Defendant Richardson denied his requests to use the bathroom during count.  (Dkt. #1 at ¶¶ 109-10, 115, 118, 129).

On February 28, 2006, Defendant Richardson allowed Plaintiff to use the bathroom, but then later falsely charged him with a major misconduct violation for being "out of place."  (Dkt. #1 at ¶ 130).  On March 1, 2006, Plaintiff exited his cell to ask Defendant Tefft if he could use the bathroom. (Dkt. #1 at ¶ 137).  Defendant Tefft refused, forcing Plaintiff to urinate on himself.  (Dkt. #1 at ¶ 137). Defendant Richardson charged Plaintiff with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 138).  Richardson charged Plaintiff with these two misconduct violations in response to the change in policy regarding inmates' ability to use the bathroom if count did not clear within 30 minutes. (Dkt. #1 at ¶ 147).

Plaintiff initiated this action on March 19, 2007, asserting that Defendants violated his rights under the First and Eighth Amendments, as well as his right to substantive and procedural due process.  (Dkt. #1).  All Defendants (save Defendant Migliorino) now move for summary judgment. Plaintiff has also moved for partial summary judgment regarding his claims against Defendant Lewis.


## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo*

*v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.


## ANALYSIS

I.        **Eighth Amendment Claim Against Defendant Lewis**

As discussed above, Plaintiff has asserted the following.  Plaintiff transferred to the Ionia Correctional Facility on May 13, 2004.  Prior to his transfer, Plaintiff was provided a low sodium diet detail which was valid through July 20, 2004.  After arriving at the Ionia facility, Plaintiff provided food services with a copy of his diet detail and was immediately provided low sodium meals.  Plaintiff received low sodium meals through the noon meal on May 18, 2004.  However, when Plaintiff received his evening meal on May 18, 2004, he was informed that Defendant Lewis had instructed food services "not to prepare any more diet trays for Plaintiff."

When asked about this matter, Defendant Lewis stated that "he [would] not honor a detail from another facility."  Prison officials again provided Plaintiff with low sodium meals beginning on May 28, 2004.  Plaintiff asserts that during the ten days that he was deprived of a low sodium diet, he "suffered excruciating headaches, blurry vision, and dizziness from eating the food off the regular line and by the fifth day he had to stop eating much of the food to ease the pain."  Plaintiff allegedly lost ten pounds during this time.  Plaintiff asserts that Defendant Lewis' actions violated his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff and Defendant Lewis have both moved for summary judgment as to this particular claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Defendant Lewis asserts that "since custody staff do not have knowledge of prisoner's medical conditions, and can only follow medical details, which Plaintiff did not have, [he] cannot be

charged with deliberate indifference to a serious medical need." (Dkt. #59 at 8). Defendant Lewis has also submitted an affidavit in which he asserts that he "never refused to honor a valid therapeutic diet order written by a doctor or dietician at ICF." (Dkt. #61, Lewis Affidavit at ¶ 4).

Plaintiff has submitted an affidavit in which he asserts the same general facts (relative to this particular claim) as are articulated in his complaint and discussed above. (Dkt. #57 at ¶¶ 3-22). Plaintiff has also submitted a copy of the medical detail that was in effect as of the date he transferred to the Ionia facility. This detail, instructing Plaintiff to receive a low sodium diet, was ordered by Dr. Royster on April 28, 2004, and was valid through July 20, 2004. (Dkt. #57, Exhibit 1 at 15).

The evidence submitted by Plaintiff and Defendant Lewis reveals that neither party is entitled to summary judgment. Defendant Lewis' assertion that Plaintiff did not have a medical detail during the time period in question is contradicted by Plaintiff's submission of a medical detail which reveals just the opposite. To the extent that Defendant Lewis defends his actions on the grounds that this medical detail was not issued by "a doctor or dietician at ICF," the Court notes that Defendant Lewis has identified no authority which supports the proposition that, consistent with the Eighth Amendment, he is entitled to pick and choose which medical orders and directives he will honor. Furthermore, while Plaintiff has submitted evidence sufficient to counter Defendant Lewis' motion for summary judgment, such evidence does not reveal the absence of any question of fact as to this claim. For example, Defendants have submitted evidence that Plaintiff violated his diet detail on at least one occasion raising a question of fact as to whether Plaintiff's request for a low sodium diet was the product of a serious medical need or merely personal preference.

Accordingly, the Court recommends that Defendant Lewis' motion for summary judgment be denied. The Court also recommends that Plaintiff's motion for partial summary judgment be denied.

II.          **Eighth Amendment Claims Against Defendants Richardson and Tefft**

In his complaint, Plaintiff asserts that from October 2005 through January 17, 2006, he was allowed to use the bathroom during count. Beginning on January 18, 2006, prison officials, acting pursuant to a change in policy, no longer permitted inmates to use the bathroom during count. Plaintiff asserts that on ten occasions between January 21, 2006, and February 24, 2006, he urinated on himself because Defendant Richardson denied his requests to use the bathroom during count. Plaintiff also asserts that on March 1, 2006, Defendant Tefft denied his request to use the bathroom during count, causing him to again urinate on himself. Plaintiff asserts that this conduct violated his Eighth Amendment right to be free from cruel or unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer*, 511 U.S. at 834. When determining whether a prison official's conduct falls below this standard, the Court employs a two prong test containing an objective and a subjective component. The objective component considers whether the alleged deprivation was sufficiently serious, whereas the subjective component examines the official's state of mind to determine whether he acted with "deliberate indifference" to inmate health or safety. *Id.* at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d

513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  It must be remembered, however, that "the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience."  *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992); *see also*, *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (recognizing that the Eighth Amendment does not protect against "mere discomfort or inconvenience"). Accordingly, contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities."  *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

        If the objective test is satisfied, the Court must then determine whether the prison official acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  In other words, was the official deliberately indifferent to Plaintiff's health or safety.  *Id.*  However, the Eighth Amendment is not implicated where prison officials simply acted with negligence.  *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle*, 429 U.S. at 105-06).  In sum, to establish that the prison official acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude that the official "was subjectively aware of the risk and disregard[ed] that risk by failing to take reasonable measures to abate it."  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

        With respect to the objective prong of the analysis, Plaintiff has failed to demonstrate that the deprivation to which he was subjected was sufficiently serious to implicate the Eighth Amendment. Plaintiff was unable to use the bathroom for brief periods of time while prison officials conducted a prisoner head count.  Pursuant to MDOC policy, then in effect, absent authorization from prison staff, prisoners were not permitted to use the bathroom during count.  (Dkt. #61, Haynie Affidavit at ¶ 6).  The

Court will not second guess the judgment of prison officials who determined that legitimate security needs necessitated that prisoners remain in their cell for the brief time that it takes to complete a prisoner head count. The Court further notes that Plaintiff has presented no evidence that the temporary denial of bathroom facilities he experienced caused, or reasonably could have caused, physical harm.

As many courts have concluded, such temporary deprivations do not implicate the Eighth Amendment. *See, e.g., Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (recognizing that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment"); *Dellis v. Corrections Corporation of America*, 257 F.3d 508, 511 (6th Cir. 2001) (prisoner who was temporarily denied access to a "working toilet" did not suffer deprivation of "minimal civilized measure of life's necessities"); *J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("minor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim"); *Gill v. Riddick*, 2005 WL 755745 at *16 (N.D.N.Y., Mar. 31, 2005) ("the temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation").

Because Plaintiff cannot demonstrate that he experienced an "extreme deprivation" that deprived him of the "minimal civilized measure of life's necessities," Defendants Richardson and Tefft are entitled to summary judgment as to Plaintiff's Eighth Amendment claims. However, even if Plaintiff was able to satisfy the objective prong of the analysis, Defendants would still be entitled to summary judgment, as Plaintiff cannot satisfy the subjective prong of the analysis.

While Plaintiff asserts that he suffered from a medical condition that necessitated that he use the bathroom on demand, he has failed to present evidence that such is the case. In fact, as Plaintiff acknowledges Dr. Migliorino refused to provide Plaintiff with a medical detail permitting him to use the

bathroom during count, on the grounds that Plaintiff's condition did not necessitate such.  Thus, Plaintiff has failed to demonstrate that Defendants Richardson and Tefft were aware that he allegedly experienced a medical condition that required that Plaintiff be permitted to use the bathroom on demand.  Moreover, as Defendants Richardson and Tefft assert, prisoners were notified at least five minutes before the start of count so as to give them the opportunity to use the bathroom.  (Dkt. #61, Richardson Affidavit at ¶¶ 4, 6; Dkt. #71, Tefft Affidavit at ¶ 5).  In sum, Plaintiff has failed to establish that Defendants Richardson and Tefft were subjectively aware of, and failed to take reasonable measures in response to, Plaintiff's alleged need to use the bathroom on demand during count.

As indicated above, in February 2006, prison officials again modified the policy regarding bathroom usage during count.  Specifically, the policy was modified so that prisoners could be permitted to use the bathroom if count lasted longer than 30 minutes.  Plaintiff asserts that Defendant Richardson initially refused to honor this policy change and continued to deny his requests to use the bathroom during count.  Defendant Richardson disputes this, asserting that "[o]nce staff was made aware of the new rule," prisoners were permitted to use the bathroom during count in "in accordance with that rule." (Dkt. #61, Richardson Affidavit at ¶ 10).  This dispute, however, is irrelevant.  Plaintiff cannot prevail in this matter by demonstrating that Defendants failed to follow prison policy, he must instead demonstrate that Defendants violated his federal constitutional rights.  As discussed above, Plaintiff can make no such showing.  The Court recommends, therefore, that Defendants Richardson and Tefft are entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

**III.**          **Retaliation Claims Against Defendants Case, Christiansen, and Richardson**

Plaintiff asserts that he was subjected to unlawful retaliation by Defendants Case, Christiansen, and Richardson, all of whom now move for summary judgment. The Court will individually address each Defendant's motion below.

A.          Defendant Case

As discussed above, on December 22, 2004, Plaintiff allegedly received a meal containing "processed turkey," contrary to his medical detail for a low sodium diet. Plaintiff subsequently filed a grievance against Defendant Case regarding this incident. On January 11, 2005, Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation. According to Plaintiff, Defendant Case charged him with this violation in retaliation for filing the aforementioned grievance.

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

1.          Protected Conduct

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355

(1996)).  This protection also guarantees to inmates the right to file non-frivolous grievances.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (because a prisoner's constitutional right to access the courts extends to established prison grievance procedures, filing non-frivolous grievances constitutes protected conduct); *Eby*, 481 F.3d at 440 (same).

Plaintiff asserts that Defendant Case charged him with a major misconduct violation in retaliation for filing a grievance against him.  Plaintiff has submitted a copy of the grievance in question.  While the grievance was denied, it does not appear to have been a frivolous grievance.  Accordingly, the Court finds that Plaintiff was engaged in protected conduct.

2.      Adverse Action Which Would Deter a Person of Ordinary Firmness

As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).  As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603.  Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.*  Charging an inmate with a major misconduct violation constitutes neither an inconsequential nor de minimis action.  Accordingly, the Court finds that there exist unresolved questions of fact regarding this particular element of the analysis.

3.   Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged.  In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.  *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").  Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment.  *Eby*, 481 F.3d at 441-42.

Defendant Case asserts that when Plaintiff entered the chow line on January 11, 2005, he gave him "a direct order not to substitute anything on his tray."  (Dkt. #65, Case Affidavit at ¶ 4).  According to Case, Plaintiff "disobeyed this order when he continued through the regular chow line with an unauthorized beverage."  (Dkt. #65, Case Affidavit at ¶ 4).  Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation.  (Dkt. #65, Case Affidavit at ¶ 4).  Defendant Case asserts, however, that he did not charge Plaintiff with this violation in retaliation for any grievance that Plaintiff had filed.  (Dkt. #65, Case Affidavit at ¶ 7).

With respect to this particular incident, Plaintiff asserts that Defendant Case never even spoke to him.  (Dkt. #81 at ¶¶ 22-23).  This assertion is refuted, however, by other evidence submitted by Plaintiff.  Plaintiff has submitted a statement from Mike Harmon, a food services steward who witnessed the incident.  (Dkt. #81, Exhibit 30).  According to Harmon, Defendant Case did approach and speak with Plaintiff while Plaintiff was in the chow line.  (Dkt. #81 at ¶ 24; Dkt. #81, Exhibit 30). Furthermore, Plaintiff acknowledges that the soda he originally received with his meal was, in fact, substituted with another beverage.  (Dkt. #81 at ¶¶ 23-25).  This is supported by the statement of the food services worker who placed the replacement beverage on Plaintiff's food tray.  (Dkt. #81, Exhibit 31).  While Plaintiff claims that he did not request this replacement beverage, (dkt. #81 at ¶ 23), the fact is that Plaintiff acknowledges receiving a replacement beverage contrary to Defendant Case's direct order.  Thus, the Court concludes that Plaintiff cannot establish the requisite causal connection. Accordingly, the Court recommends that Defendant Case is entitled to summary judgment as to this particular claim.

B.     Defendant Christiansen

Plaintiff asserted the following in his complaint.  On February 10, 2005, Plaintiff was served meat loaf, which he subsequently gave to another prisoner.  Defendant Christiansen subsequently authored a memorandum to the "Health Unit Manager" requesting that Plaintiff's diet detail be cancelled because Plaintiff was trading food from his tray for food "from a regular tray."  Dr. Migliorino later discontinued Plaintiff's low sodium diet detail.  Plaintiff asserts that Defendant Christiansen sought to have his diet detail cancelled in retaliation for Plaintiff having filed a grievance against Defendant Case.

While Plaintiff can satisfy the first two prongs of the analysis, Defendant Christiansen

has demonstrated that his actions were not motivated by Plaintiff's protected conduct.  Plaintiff alleges that Christiansen acted in retaliation for Plaintiff having filed a grievance against Defendant Case. Defendant Christiansen has asserted, however, that when he wrote the memorandum in question he had no knowledge that Plaintiff had filed a grievance against Defendant Case or any other food services staff member.  (Dkt. #61, Christiansen Affidavit at ¶ 5).  Plaintiff offers no evidence calling this assertion into question.  Moreover, Plaintiff has acknowledged that on the day in question he gave another prisoner food from his diet tray.  In sum, Defendant Christiansen has demonstrated that his actions were not motivated by Plaintiff's protected conduct.  Accordingly, the Court recommends that Defendant Christiansen is entitled to summary judgment as to this claim.

### C.      Defendant Richardson

As detailed above, Plaintiff asserts that Defendant Richardson charged him with major misconduct violations on each of the following dates: (1) January 20, 2006; (2) February 28, 2006; and (3) March 1, 2006.  Plaintiff asserts that each of these major misconduct violations was issued for improper retaliatory purposes.

### 1.      January 20, 2006

In his complaint, Plaintiff acknowledges that on January 20, 2006, he "left his cube to seek permission" to use the bathroom.  (Dkt. #1 at ¶ 105).  Defendant Richardson charged Plaintiff with being "out of place" because Plaintiff did not have permission to be out of his "cube" during count. (Dkt. #1 at ¶¶ 107-08; Dkt. #61, Exhibit 4B).  Plaintiff was convicted of this charge.  (Dkt. #61, Exhibit 4B).  Defendant Richardson asserts that Plaintiff did not have permission to leave his cell during count,

an assertion which Plaintiff does not challenge.  (Dkt. #61, Richardson Affidavit at ¶¶ 5-6).  Thus, even assuming Plaintiff can establish the first two elements of the retaliation analysis, he cannot satisfy the third element.  The evidence reveals that Plaintiff was charged with being out of place because he was, in fact, out of his cell during count without authorization.  The Court recommends, therefore, that Defendant Richardson is entitled to summary judgment as to this particular claim.

2.      February 28, 2006 and March 1, 2006

In his complaint, Plaintiff asserts that on February 28, 2006, and March 1, 2006, Defendant Richardson falsely charged him with being "out of place."  (Dkt. #1 at ¶¶ 130, 137-38).  Plaintiff asserts that Richardson charged him with these two misconduct violations in retaliation for a January 22, 2006 grievance which Plaintiff filed concerning Richardson's refusal to allow him to use the bathroom during count, as well as the fact that this issue was resolved in Plaintiff's favor.  (Dkt. #83 at ¶ 53; Dkt. #1, Exhibit 5).

A review of the grievance reveals that it is not frivolous and, furthermore, a reasonable juror could conclude that being charged with a major misconduct violation is sufficient to deter a person of "ordinary firmness" from continuing to submit non-frivolous grievances.  Thus, Plaintiff has satisfied the first two elements of the retaliation analysis.

With respect to the causation element, Plaintiff has alleged facts from which a reasonable juror could infer that Defendant Richardson's actions were motivated (at least in part) by Plaintiff's protected activity.  Moreover, unlike the January 20, 2006 misconduct charge (discussed immediately above) the record does not appear to contain evidence supporting Defendant Richardson's actions.  In response, Defendant Richardson offers neither evidence nor argument that his actions were not

motivated by Plaintiff's protected conduct.   In other words, Defendant Richardson has failed to demonstrate that he "would have taken the same action even without the protected activity." Accordingly, the Court recommends that Defendant Richardson's motion for summary judgment be denied as to these two claims.


**IV.**          **Procedural Due Process Claims Against Defendants Lowery and Jackson**

As discussed above, Plaintiff asserts the following in his complaint.  Plaintiff was issued a misconduct ticket on January 20, 2006, for being "out of place."  Pursuant to this charge, Plaintiff met with Defendant Lowery, an MDOC hearing investigator.  Plaintiff provided Lowery with "his defense and written questions for his witnesses."  Defendant Lowery refused to submit written questions to two of Plaintiff's four witnesses, Dr. Hutchinson and ARUS Kelly.  Defendant Jackson, the hearing officer in this matter, likewise refused Plaintiff's request to submit questions to Dr. Hutchinson and ARUS Kelly.  Plaintiff asserts that Defendants Lowery and Jackson, by refusing his requests to present evidence from Dr. Hutchinson and ARUS Kelly, deprived him of his Fourteenth Amendment right to procedural due process.

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must afford the individual with notice and an opportunity to be heard.  *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  The fundamental requirement of due process is the right to be heard "at a meaningful time and in a meaningful manner."  *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

The requirements of due process, however, are "flexible and depend on a balancing of the interests affected by the relevant government action." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985). While inmates have an interest in ensuring that they are not arbitrarily subjected to discipline or loss of privileges at the hands of prison officials, this interest "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings 'take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.'" *Id.* at 454. Accordingly, with respect to the safeguards required by due process, the Court must take into account "the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Id.* at 454-55.

With respect to prison disciplinary proceedings, such as those implicated by Plaintiff's claim, the requirements of procedural due process are satisfied where the prisoner is provided "minimal notice and opportunity to be heard" and the subsequent decision is supported by "some evidence." *Branham v. Spurgis*, 720 F.Supp. 605, 608 (W.D. Mich. 1989) (citations omitted); *see also*, *Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 66 (6th Cir., Mar. 15, 2004); *Williams v. Bass*, 63 F.3d 483, 485-86 (6th Cir 1995); *Washington v. Randall-Owens*, 2007 WL 2713749 at *7-8 (E.D. Mich., Sept. 17, 2007).

The procedures which were available to Plaintiff far exceeded this requirement. Plaintiff was provided notice of the disciplinary hearing and was afforded an opportunity to be heard. Furthermore, a review of the hearing report reveals that Plaintiff's conviction for bring out of place was supported by "some evidence." With respect to Plaintiff's claim that his due process rights were violated

by Defendants' refusal to submit questions to Dr. Hutchinson and ARUS Kelly, the Court is not persuaded.

Pursuant to Michigan law, Plaintiff could have requested a rehearing on the matter on the grounds that his "due process rights were violated." *See* Mich. Comp. Laws § 791.254(2)(c). If his request for rehearing was denied, Plaintiff could have pursued the matter in the state circuit court. *See* Mich. Comp. Laws § 791.255. The circuit court has the authority to reverse the result of the prison disciplinary hearing if the court finds that the prisoner's due process rights were violated. *See* Mich. Comp. Laws § 791.255(4), (5); *Khan v. Warden, Jackson Prison*, 340 N.W.2d 77, 77-78 (Mich. Ct. App. 1983). Michigan law further provides that prison disciplinary convictions must be supported by "competent, material and substantial evidence on the whole record," rather than simply "some evidence." *See* Mich. Comp. Laws § 791.255(4). This framework of procedural protections far exceeds that required by the United States Constitution. *See Branham*, 720 F.Supp. at 608; *Randall-Owens*, 2007 WL 2713749 at *7-8.

Defendant Lowery asserts that he did not submit to ARUS Kelly the questions that Plaintiff prepared for him because the answers to such "would not prove or disprove the alleged violation had occurred." (Dkt. #61, Lowery Affidavit at ¶ 3). Plaintiff has not demonstrated otherwise. As for Plaintiff's questions for Dr. Hutchinson, Defendant Lowery asserts that he did not submit those to the doctor because Plaintiff "refused to sign the 'Patient's Authorization for Disclosure of Health Information' form." (Dkt. #61, Lowery Affidavit at ¶ 5). Plaintiff has acknowledged that he refused to sign this form. (Dkt. #79 at ¶¶ 11-16). Plaintiff has likewise failed to allege that the procedural protections provided for by Michigan law were in any way unavailable to him or otherwise ineffective to protect his due process rights.

The Court further notes that Defendant Jackson, who has been sued in his official capacity, is entitled to absolute judicial immunity with respect to actions taken in his capacity as an MDOC hearings officer. *See Williams v. McGinnis*, 57 Fed. Appx. 662, 664 (6th Cir., Jan. 31, 2003) (citing *Shelly v. Johnson*, 849 F.2d 228, 229-30 (6th Cir. 1988)). Accordingly, for the reasons discussed above, the Court recommends that Defendants Lowery and Jackson are entitled to summary judgment as to these claims.

V.        **Plaintiff's Claims Against Defendant Haynie**

In his complaint, Plaintiff asserts that Defendant Haynie "abandoned his supervisory responsibilities" by failing to carry out "the specific duties of his position." (Dkt. #1 at ¶¶ 168-71).

Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability, as Plaintiff must instead allege personal involvement by a particular defendant. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998); *Street v. Corrections Corp. of America*, 102 F.3d 810, 817-18 (6th Cir. 1996).

Plaintiff has failed to assert facts which establish personal involvement by Defendant Haynie in any alleged wrongdoing. Accordingly, the Court recommends that Defendant Haynie is entitled to summary judgment.

**VI.**          **Plaintiff's Substantive Due Process Claims**

The gravamen of Plaintiff's action is that Defendants' various actions violated his right to be free from improper retaliation, as well as his right to be free from cruel and unusual punishment. Plaintiff asserts that Defendants' actions violated the First and Eighth Amendments, as well as the substantive due process clause of the Fourteenth Amendment.  The First and Eighth Amendments, however, sufficiently protect Plaintiff from such alleged harms.  The Court recommends, therefore, that Plaintiff's substantive due process claims be dismissed.

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law.  Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause.  *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)).  The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process.  *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment.  The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment.  *Id.* at 272-73.  The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief."  *Id.* at 274-75.

Plaintiff alleges that his substantive due process rights were violated by Defendants' actions.  However, the First and Eighth Amendments adequately protect Plaintiff from the wrongs alleged in his complaint.  Therefore, as in *Albright*, substantive due process can provide Plaintiff no relief.  Accordingly, the Court recommends that Plaintiff's substantive due process claims be dismissed.

## <u>CONCLUSION</u>

As discussed herein, the Court recommends that <u>Plaintiff's Motion for Partial Summary Judgment</u>, (dkt. #55), be **denied**; and <u>Defendants' Motion for Summary Judgment</u>, (dkt. #58), be **granted in part and denied in part**. Specifically, the Court recommends that Plaintiff's claims against Defendants Lewis, Case, Christiansen, Richardson, Tefft, Haynie, Lowery, and Jackson be dismissed except for: (1) Plaintiff's Eighth Amendment claim against Defendant Lewis, and (2) Plaintiff's retaliation claims against Defendant Richardson arising from Defendant Richardson's decision to charge Plaintiff with major misconduct violations on February 28, 2006 and March 1, 2006. The Court recommends that these particular claims be permitted to go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  August 28, 2008               /s/ Ellen S. Carmody
                                     ELLEN S. CARMODY
                                     United States Magistrate Judge

-27-