UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT BOLES,

       Plaintiff,                                        Hon. Paul L. Maloney

v.                                                          Case No. 1:07 CV 277

GARY LEWIS, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Migliorino's Motion for Summary Judgment. (Dkt. #185). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). In 2001, Plaintiff began receiving from prison officials a low sodium diet. (Dkt. #1 at ¶ 24). The medical details, pursuant to which Plaintiff received a low sodium diet, were regularly renewed. (Dkt. #1 at ¶¶ 26-28). On May 13, 2004, Plaintiff transferred from the Brooks Correctional Facility to the Ionia Correctional Facility. (Dkt. #1 at ¶¶ 27, 29). Prior to being transferred from the Brooks facility, Plaintiff's diet detail was renewed through July 20, 2004. (Dkt. #1 at ¶ 28).

When Plaintiff arrived at the Ionia facility he provided a nurse with a copy of his diet detail. (Dkt. #1 at ¶ 29-30). The nurse instructed Plaintiff to "take the detail to food service when it is

time to eat and food service will honor [the] diet detail." (Dkt. #1 at ¶ 30). Plaintiff did as instructed and began receiving low sodium meals. (Dkt. #1 at ¶¶ 31-33). Plaintiff received low sodium meals through the noon meal on May 18, 2004. (Dkt. #1 at ¶ 33). When Plaintiff received his evening meal on May 18, 2004, he was informed that Defendant Lewis had instructed food services "not to prepare any more diet trays for Plaintiff." (Dkt. #1 at ¶¶ 33-34).

When Plaintiff asked Defendant Lewis why "he was disregarding a valid detail from the doctor," Lewis responded that "he [would] not honor a detail from another facility." (Dkt. #1 at ¶ 36). Plaintiff stated that being deprived of low sodium meals could cause him to experience "harm," to which Defendant Lewis "told the Plaintiff to file a grievance." (Dkt. #1 at ¶ 37). Plaintiff subsequently filed a grievance against Defendant Lewis for refusing to honor his low sodium diet detail. (Dkt. #1 at ¶ 38). On May 28, 2004, Plaintiff was informed that he could again receive low sodium meals. (Dkt. #1 at ¶ 46). During the ten days that Plaintiff was deprived of his prescribed low sodium diet, he "suffered excruciating headaches, blurry vision, and dizziness from eating the food off the regular line and by the fifth day he had to stop eating much of the food to ease the pain." (Dkt. #1 at ¶ 51). Plaintiff also lost ten pounds during this ten day period, as his weight dropped from 224 pounds to 212 pounds. (Dkt. #1 at ¶ 50).

On December 22, 2004, Plaintiff received a meal containing "processed turkey," contrary to his medical detail for a low sodium diet. (Dkt. #1 at ¶ 59). The processed turkey was placed on Plaintiff's food tray at the direction of Defendant Case. (Dkt. #1 at ¶ 59). Plaintiff filed a grievance regarding this incident three days later. (Dkt. #1 at ¶ 59). On January 11, 2005, Defendant Case told inmate Dwight Brown that "he was fed up with" Plaintiff "complaining about his special meals." (Dkt. #1 at ¶¶ 64-65). Defendant Case told Brown that "if [Plaintiff] come[s] to lunch today with his

complaints he is going to write a ticket and get it over with." (Dkt. #1 at ¶ 66). Later that day, Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation. (Dkt. #1 at ¶¶ 63, 68-70). Defendant Case charged Plaintiff with this violation in retaliation for Plaintiff having filed a grievance against Case for serving Plaintiff processed turkey on December 22, 2004. (Dkt. #1 at ¶¶ 63, 74-76).

On February 10, 2005, Plaintiff was served meat loaf, which he subsequently gave to another prisoner. (Dkt. #1 at ¶ 79). Defendant Case questioned Plaintiff "about giving his meat loaf to another prisoner." (Dkt. #1 at ¶¶ 77, 80). Plaintiff responded that "he was not prohibit[ed] from giving a prisoner at the same table he is at the meat loaf he was not going to eat." (Dkt. #1 at ¶ 80). Defendant Case then discussed the matter with Defendant Christiansen. (Dkt. #1 at ¶¶ 77, 81). Later that day, Defendant Christiansen "issued a memo to Health Unit Manager A. Karp requesting that the plaintiff be removed from his special diet tray for trading the chicken from his low sodium tray for apple cobbler from a regular tray." (Dkt. #1 at ¶ 78). Defendant Christiansen took this action in retaliation for Plaintiff having filed a grievance against Defendant Case. (Dkt. #1 at ¶¶ 88-90). On February 23, 2005, Defendant Migliorino discontinued Plaintiff's low sodium diet detail. (Dkt. #1 at ¶¶ 78, 83). As a result of being removed from his low sodium diet, Plaintiff suffered "elevated" blood pressure, "excruciating" headaches, "blurry" vision, "dizziness," and weight loss of seven pounds. (Dkt. #1 at ¶¶ 87, 95, 97). Plaintiff's low sodium diet detail was reinstated on March 15, 2005. (Dkt. #1 at ¶ 87).

On August 19, 2005, Plaintiff participated in a "telemedicine consultation" conducted by Dr. Hutchinson, the purpose of which was to "evaluate [Plaintiff's] candidacy for antiviral treatment for Hepatitis C." (Dkt. #1 at ¶ 99). The doctor determined that Plaintiff "qualified for treatment" which would begin in October 2005. (Dkt. #1 at ¶¶ 99-100). The doctor instructed Plaintiff that as part of this

treatment "he need[ed] to drink more than the normal amount of water." (Dkt. #1 at ¶ 100). Plaintiff "followed Dr. Hutchinson's instructions and found himself urinating frequently." (Dkt. #1 at ¶ 101).

From October 2005 through January 17, 2006, Plaintiff was allowed to go to the bathroom during prisoner count. (Dkt. #1 at ¶ 102). On January 18, 2006, Defendant Richardson modified prison policy such that Plaintiff was no longer permitted to use the bathroom until "count cleared." (Dkt. #1 at ¶¶ 103-04). As a result, Plaintiff was forced to "h[o]ld his urine in pain" while he waited for count to clear. (Dkt. #1 at ¶¶ 104-07). On January 20, 2006, Plaintiff approached prison officials to complain about this, resulting in Defendant Richardson issuing Plaintiff a major misconduct ticket for being "out of place." (Dkt. #1 at ¶¶ 105-08). Defendant Richardson issued this misconduct ticket in retaliation for Plaintiff having complained "about bathroom usage." (Dkt. #1 at ¶ 146).

Pursuant to this misconduct charge, Plaintiff met with Defendant Lowery. (Dkt. #1 at ¶ 205). Plaintiff provided Lowery with "his defense and written questions for his witnesses." (Dkt. #1 at ¶ 205). Defendant Lowery refused to submit written questions to two of Plaintiff's four witnesses. (Dkt. #1 at ¶ 205). According to Plaintiff, Defendant Lowery "intentionally failed to assist the plaintiff with his defense when refusing to gather and present critical evidence of material witnesses at the plaintiff's request." (Dkt. #1 at ¶¶ 206-22).

On January 21, 2006, Plaintiff asked Defendant Richardson if he could exit his cell to use the bathroom. (Dkt. #1 at ¶ 109). Defendant Richardson denied Plaintiff's request, informing him that he had to wait until count cleared. (Dkt. #1 at ¶ 109). Plaintiff was unable to wait and urinated on himself. (Dkt. #1 at ¶ 109). A similar incident occurred on January 22, 2006. (Dkt. #1 at ¶ 110). Plaintiff was informed that "he would be allowed to use the rest room during count if he obtained an accommodation from health care." (Dkt. #1 at ¶ 112). Plaintiff's attempt to obtain such an

accommodation was denied on the ground that he "did not have a medical need for continuous access to the rest room during count." (Dkt. #1 at ¶ 112). From January 23, 2006, through January 27, 2006, Plaintiff's requests to use the bathroom during count were denied and he was forced to either hold his urine, which caused him to experience pain, or urinate on himself. (Dkt. #1 at ¶ 115).

On or about January 30, 2006, Plaintiff was examined by Defendant Migliorino. (Dkt. #1 at ¶¶ 174-77). Plaintiff informed Dr. Migliorino that as a result of following Dr. Hutchinson's instructions to "drink more than the normal amount of water," he had to "urinate frequently." (Dkt. #1 at ¶ 179). Plaintiff asked Dr. Migliorino "for a plastic urine container or an accommodation to use [the] bathroom during count time." (Dkt. #1 at ¶ 179). Dr. Migliorino informed Plaintiff that "his problem was a custody issue" but that he would nonetheless "check it out." (Dkt. #1 at ¶ 180). The doctor concluded that Plaintiff "can use the bathroom right before count everyday and then use the bathroom immediately following count everyday and therefore you do not need a detail to use the bathroom at any time during count." (Dkt. #1 at ¶ 185).

On February 2, 2006, prison officials modified policy to permit inmates to use the bathroom "if it takes more than a half hour after count has been taken to clear count." (Dkt. #1 at ¶¶ 113-14, 117, 120). On February 6, 2006, Defendant Richardson refused to honor this policy change, forcing Plaintiff to urinate on himself. (Dkt. #1 at ¶¶ 118-21). Later that day prison officials "spoke with Richardson about clarification of bathroom usage." (Dkt. #1 at ¶ 122). Defendant Richardson nonetheless refused Plaintiff's requests to use the bathroom during count on four separate occasions between February 14, 2006, and February 24, 2006, causing Plaintiff "to experience unnecessary pain and suffering when being forced to hold his urine until count cleared, and urinating on himself." (Dkt. #1 at ¶¶ 129).

On February 28, 2006, Defendant Richardson allowed Plaintiff to use the bathroom, but then later falsely charged him with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 130). On March 1, 2006, Plaintiff exited his cell to ask Defendant Teft if he could use the bathroom. (Dkt. #1 at ¶ 137). Defendant Teft refused, causing Plaintiff to urinate on himself. (Dkt. #1 at ¶ 137). Defendant Richardson charged Plaintiff with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 138). Plaintiff was found not guilty of this charge because another prison official had previously instructed Plaintiff that he could exit his cell during count to "seek permission to use the bathroom." (Dkt. #1 at ¶¶ 139-45).

Plaintiff initiated this action on March 19, 2007, asserting that Defendants violated his rights under the First and Eighth Amendments, as well as his right to substantive and procedural due process. (Dkt. #1). Several of Plaintiff's claims have since been dismissed. (Dkt. #123). Defendant Migliorino now moves for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to

show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

# ANALYSIS

Plaintiff asserts that Defendant Migliorino's refusal to provide him with a medical detail to use the bathroom during count violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that the official "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to

abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

As discussed above, a party without the burden of proof at trial can prevail on a motion for summary judgment if he demonstrates that his opponent cannot sustain his burden at trial. Plaintiff bears the burden as to his claims against Defendant Migliorino, who moves for summary judgment on the ground that Plaintiff is unable to identify any evidence which would enable him to prevail at trial. Specifically, Defendant asserts that Plaintiff "cannot demonstrate that he had an objectively serious medical need." Defendant further asserts that "Plaintiff is unable to put forth any evidence to demonstrate the subjective element of his deliberate indifference claim against Dr. Migliorino."

With respect to the subjective element of the analysis, Plaintiff counters that Defendant Migliorino cannot deny that he suffers from Hepatitis C, was directed by Dr. Hutchinson to consume a larger than normal quantity of water, and, as a result, needs to urinate frequently. Plaintiff also asserts that Defendant Migliorino cannot deny that for a brief period of time he was permitted "to go to the bathroom during prison[er] count." Defendant Migliorino has not contested these allegations. Moreover, while these matters may be relevant to claims Plaintiff has asserted against other Defendants, such are of marginal relevance presently.

Plaintiff's claim against Defendant Migliorino is that his refusal to provide him with a medical detail to use the bathroom during count violated his Eighth Amendment right to be free from cruel and unusual punishment. To prevail on such a claim, Plaintiff must demonstrate that Defendant's failure to provide him with the requested accommodation subjected him to a substantial risk of serious harm. In other words, Plaintiff must demonstrate that his medical condition required that he be afforded an accommodation to use the bathroom whenever he chose, rather than simply waiting the short period

of time it took to conduct the prisoner count. Despite having more than two and one-half years to conduct discovery and gather evidence in support of his claims, Plaintiff has presented no evidence that such was the case. Rather, in response to the present motion, Plaintiff simply reiterates the allegations asserted in his complaint. Plaintiff has identified no evidence that his medical condition was such that he required an accommodation to use the bathroom on demand.

The Court concludes, therefore, that Plaintiff cannot satisfy the objective element of the analysis. Furthermore, even if Plaintiff could satisfy this particular element of the analysis, the result would be the same as Plaintiff is likewise unable to satisfy the subjective element.

As discussed above, to satisfy this particular element Plaintiff must demonstrate that Defendant Migliorino knew of and disregarded an "excessive risk" to Plaintiff's health or safety. In other words, Plaintiff must demonstrate that Defendant Migliorino knew that failure to afford Plaintiff the requested accommodation would subject Plaintiff to an excessive risk of harm. Plaintiff asserts that this element is satisfied by the fact that he told Defendant Migliorino that he needed an accommodation to use the bathroom on demand. Such misses the mark, however, as the question is not whether Defendant was aware that Plaintiff requested the accommodation in question, but instead whether his refusal to provide such violated the Eighth Amendment. In this respect, the Court notes that Plaintiff has again failed to present any evidence that would support a finding in his favor as to this element of his claim. Plaintiff has instead simply reiterated the allegations in his complaint.

In the absence of evidence supporting his claim, it appears that Plaintiff simply disagrees with Defendant Migliorino's refusal to provide Plaintiff with the requested accommodation. However, to the extent Plaintiff merely disagrees with the treatment Defendant provided or asserts that he received negligent care, such does not implicate the Eighth Amendment. *See, e.g., Williams v. Mehra*, 186 F.3d

685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. 97, 105-06 (1976)); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106).

In sum, despite having more than two and one-half years to conduct discovery and gather evidence in support of his claim, Plaintiff has failed to present or identify any evidence which would support a finding in his favor as to his claim against Defendant Migliorino. Accordingly, the undersigned recommends that Defendant Migliorino's motion for summary judgment be granted.

## CONCLUSION

As discussed herein, the undersigned recommends that Defendant Migliorino's Motion for Summary Judgment, (dkt. #185), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 4, 2010     /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge