UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT BOLES,

        Plaintiff,                       Hon. Paul L. Maloney

v.                                    Case No. 1:07 CV 277

GARY LEWIS, et al.,

        Defendants.

_____/


## REPORT AND RECOMMENDATION

      This matter is before the Court on <u>Defendants Lewis, Case, Christiansen, and Richardson's Motion for Summary Judgment</u>. (Dkt. #215). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

      The following allegations are contained in Plaintiff's verified complaint. (Dkt. #1). In 2001, Plaintiff began receiving from prison officials a low sodium diet. (Dkt. #1 at ¶ 24). The medical details, pursuant to which Plaintiff received a low sodium diet, were regularly renewed. (Dkt. #1 at ¶¶ 26-28). On May 13, 2004, Plaintiff transferred from the Brooks Correctional Facility to the Ionia Correctional Facility. (Dkt. #1 at ¶¶ 27, 29). Prior to being transferred from the Brooks facility, Plaintiff's diet detail had been renewed through July 20, 2004. (Dkt. #1 at ¶ 28).

      When Plaintiff arrived at the Ionia facility he provided a nurse with a copy of his diet detail. (Dkt. #1 at ¶ 29-30). The nurse instructed Plaintiff to "take the detail to food service when it is

time to eat and food service will honor [the] diet detail." (Dkt. #1 at ¶ 30). Plaintiff did as instructed and began receiving low sodium meals. (Dkt. #1 at ¶¶ 31-33). Plaintiff received low sodium meals through the noon meal on May 18, 2004. (Dkt. #1 at ¶ 33). When Plaintiff received his evening meal on May 18, 2004, he was informed that Defendant Lewis had instructed food services "not to prepare any more diet trays for Plaintiff." (Dkt. #1 at ¶¶ 33-34).

When Plaintiff asked Defendant Lewis why "he was disregarding a valid detail from the doctor," Lewis responded that "he [would] not honor a detail from another facility." (Dkt. #1 at ¶ 36). Plaintiff stated that being deprived of low sodium meals could cause him to experience "harm," to which Defendant Lewis told Plaintiff "to file a grievance." (Dkt. #1 at ¶ 37). Plaintiff subsequently filed a grievance against Defendant Lewis for refusing to honor his low sodium diet detail. (Dkt. #1 at ¶ 38). On May 28, 2004, Plaintiff was informed that he could again receive low sodium meals. (Dkt. #1 at ¶ 46). During the ten days that Plaintiff was deprived of his prescribed low sodium diet, he "suffered excruciating headaches, blurry vision, and dizziness from eating the food off the regular line and by the fifth day he had to stop eating much of the food to ease the pain." (Dkt. #1 at ¶ 51). Plaintiff also lost ten pounds during this ten day period, as his weight dropped from 224 pounds to 212 pounds. (Dkt. #1 at ¶ 50).

On December 22, 2004, Plaintiff received a meal containing "processed turkey," contrary to his medical detail for a low sodium diet. (Dkt. #1 at ¶ 59). The processed turkey was placed on Plaintiff's food tray at the direction of Defendant Case. (Dkt. #1 at ¶ 59). Plaintiff filed a grievance regarding this incident three days later. (Dkt. #1 at ¶ 59). On January 11, 2005, Defendant Case told inmate Dwight Brown that "he was fed up with" Plaintiff "complaining about his special meals." (Dkt. #1 at ¶¶ 64-65). Defendant Case told Brown that "if [Plaintiff] come[s] to lunch today with his

complaints he is going to write a ticket and get it over with." (Dkt. #1 at ¶ 66). Later that day, Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation. (Dkt. #1 at ¶¶ 63, 68-70). Defendant Case charged Plaintiff with this violation in retaliation for Plaintiff having filed a grievance against Case for serving Plaintiff processed turkey on December 22, 2004. (Dkt. #1 at ¶¶ 63, 74-76).

On February 10, 2005, Plaintiff was served meat loaf, which he subsequently gave to another prisoner. (Dkt. #1 at ¶ 79). Defendant Case questioned Plaintiff "about giving his meat loaf to another prisoner." (Dkt. #1 at ¶¶ 77, 80). Plaintiff responded that "he was not prohibit[ed] from giving a prisoner at the same table he is at the meat loaf he was not going to eat." (Dkt. #1 at ¶ 80). Defendant Case then discussed the matter with Defendant Christiansen. (Dkt. #1 at ¶¶ 77, 81). Later that day, Defendant Christiansen "issued a memo to Health Unit Manager A. Karp requesting that the plaintiff be removed from his special diet tray for trading the chicken from his low sodium tray for apple cobbler from a regular tray." (Dkt. #1 at ¶ 78). Defendant Christiansen took this action in retaliation for Plaintiff having filed a grievance against Defendant Case. (Dkt. #1 at ¶¶ 88-90). On February 23, 2005, Defendant Migliorino discontinued Plaintiff's low sodium diet detail. (Dkt. #1 at ¶¶ 78, 83). As a result of being removed from his low sodium diet, Plaintiff suffered "elevated" blood pressure, "excruciating" headaches, "blurry" vision, "dizziness," and weight loss of seven pounds. (Dkt. #1 at ¶¶ 87, 95, 97). Plaintiff's low sodium diet detail was reinstated on March 15, 2005. (Dkt. #1 at ¶ 87).

On August 19, 2005, Plaintiff participated in a "telemedicine consultation" conducted by Dr. Hutchinson, the purpose of which was to "evaluate [Plaintiff's] candidacy for antiviral treatment for Hepatitis C." (Dkt. #1 at ¶ 99). The doctor determined that Plaintiff "qualified for treatment" which would begin in October 2005. (Dkt. #1 at ¶¶ 99-100). The doctor instructed Plaintiff that as part of this

treatment "he need[ed] to drink more than the normal amount of water." (Dkt. #1 at ¶ 100). Plaintiff

"followed Dr. Hutchinson's instructions and found himself urinating frequently." (Dkt. #1 at ¶ 101).

From October 2005 through January 17, 2006, Plaintiff was allowed to go to the

bathroom during prisoner count. (Dkt. #1 at ¶ 102). On January 18, 2006, Defendant Richardson

modified policy such that Plaintiff was no longer permitted to use the bathroom until "count cleared."

(Dkt. #1 at ¶¶ 103-04). As a result, Plaintiff was forced to "h[o]ld his urine in pain" while he waited for

count to clear. (Dkt. #1 at ¶¶ 104-07). On January 22, 2006,[1] Plaintiff filed a grievance regarding this

matter, resulting in Defendant Richardson issuing Plaintiff a major misconduct ticket for being "out of

place." (Dkt. #1 at ¶¶ 105-08, 148; Dkt. #1, Exhibit 5). Defendant Richardson issued this misconduct

ticket in retaliation for Plaintiff having filed a grievance "about bathroom usage." (Dkt. #1 at ¶¶ 146,

148).

Pursuant to this misconduct charge, Plaintiff met with Defendant Lowery. (Dkt. #1 at

¶ 205). Plaintiff provided Lowery with "his defense and written questions for his witnesses." (Dkt. #1

at ¶ 205). Defendant Lowery refused to submit written questions to two of Plaintiff's four witnesses,

Dr. Hutchinson and ARUS Kelly. (Dkt. #1 at ¶¶ 205, 234). According to Plaintiff, Defendant Lowery

"intentionally failed to assist the plaintiff with his defense when refusing to gather and present critical

evidence of material witnesses at the plaintiff's request." (Dkt. #1 at ¶¶ 206-22).

On January 21, 2006, Plaintiff asked Defendant Richardson if he could exit his cell to

use the bathroom. (Dkt. #1 at ¶ 109). Defendant Richardson denied Plaintiff's request, informing him

that he had to wait until count cleared. (Dkt. #1 at ¶ 109). Plaintiff was unable to wait and urinated on

---

[1] In his various pleadings, Plaintiff confuses the date on which this grievance was filed. In some passages, he asserts that it was filed on January 20, 2006, and states in other passages that it was filed on January 22, 2006. Plaintiff has attached to his complaint a copy of the grievance in question, which reflects that it was initiated on January 22, 2006. (Dkt. #1, Exhibit 5).

himself.  (Dkt. #1 at ¶ 109).  A similar incident occurred on January 22, 2006.  (Dkt. #1 at ¶ 110).

Plaintiff was informed that "he would be allowed to use the rest room during count if he obtained an

accommodation from health care."  (Dkt. #1 at ¶ 112).  Plaintiff's attempt to obtain such an

accommodation was denied on the ground that he "did not have a medical need for continuous access

to the rest room during count."  (Dkt. #1 at ¶ 112).  From January 23, 2006, through January 27, 2006,

Plaintiff's requests to use the bathroom during count were denied and he was forced to either hold his

urine, which caused him to experience pain, or urinate on himself.  (Dkt. #1 at ¶ 115).

On or about January 30, 2006, Plaintiff was examined by Defendant Migliorino.  (Dkt.

#1 at ¶¶ 174-77).  Plaintiff informed Dr. Migliorino that as a result of following Dr. Hutchinson's

instructions to "drink more than the normal amount of water," he had to "urinate frequently."  (Dkt. #1

at ¶ 179).  Plaintiff asked Dr. Migliorino "for a plastic urine container or an accommodation to use [the]

bathroom during count time."  (Dkt. #1 at ¶ 179).  Dr. Migliorino informed Plaintiff that "his problem

was a custody issue" but that he would nonetheless "check it out."  (Dkt. #1 at ¶ 180).  The doctor

concluded that Plaintiff "can use the bathroom right before count everyday and then use the bathroom

immediately following count everyday and therefore you do not need a detail to use the bathroom at any

time during count."  (Dkt. #1 at ¶ 185).

On February 2, 2006, prison officials modified policy to permit inmates to use the

bathroom "if it takes more than a half hour after count has been taken to clear count."  (Dkt. #1 at ¶¶

113-14, 117, 120).  On February 6, 2006, Defendant Richardson refused to honor this policy change,

forcing Plaintiff to urinate on himself.  (Dkt. #1 at ¶¶ 118-21).  Later that day prison officials "spoke

with Richardson about clarification of bathroom usage."  (Dkt. #1 at ¶ 122).  Defendant Richardson

nonetheless refused Plaintiff's requests to use the bathroom during count on four separate occasions

between February 14, 2006, and February 24, 2006, causing Plaintiff "to experience unnecessary pain and suffering when being forced to hold his urine until count cleared, and urinating on himself." (Dkt. #1 at ¶¶ 129). Plaintiff asserts that on ten occasions between January 21, 2006, and February 24, 2006, he urinated on himself because Defendant Richardson denied his requests to use the bathroom during count. (Dkt. #1 at ¶¶ 109-10, 115, 118, 129). Plaintiff asserts that Defendant Richardson refused to allow him to use the bathroom as retaliation for filing a grievance, on January 22, 2006, regarding the bathroom usage issue. (Dkt. #1 at ¶¶ 148-50; Dkt. #1, Exhibit 5).

On February 28, 2006, Defendant Richardson allowed Plaintiff to use the bathroom, but then later falsely charged him with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 130). On March 1, 2006, Plaintiff exited his cell to ask Defendant Tefft if he could use the bathroom. (Dkt. #1 at ¶ 137). Defendant Tefft refused, forcing Plaintiff to urinate on himself. (Dkt. #1 at ¶ 137). Defendant Richardson charged Plaintiff with a major misconduct violation for being "out of place." (Dkt. #1 at ¶ 138). Richardson charged Plaintiff with these two misconduct violations in response to the change in policy regarding inmates' ability to use the bathroom if count did not clear within 30 minutes. (Dkt. #1 at ¶ 147).

Plaintiff initiated this action on March 19, 2007, asserting that Defendants violated his rights under the First and Eighth Amendments, as well as his right to substantive and procedural due process. (Dkt. #1). Many of the claims asserted in Plaintiff's complaint have since been dismissed. The only claims remaining in this case are as follows: (1) Eighth Amendment claims against Defendants Lewis, Richardson, Case, and Christiansen; (2) a retaliation claim against Defendant Case; and (3) various retaliation claims against Defendant Richardson. Defendants Lewis, Case, Christiansen, and Richardson now move for summary judgment as to the remaining claims asserted against them.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM

MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion

"is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier

of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).


## ANALYSIS

I.          **Eighth Amendment Claim Against Defendant Lewis**

As discussed above, Plaintiff asserts that he was transferred to the Ionia Correctional

Facility on May 13, 2004. Prior to his transfer, Plaintiff was provided a low sodium diet detail which

was valid through July 20, 2004. After arriving at the Ionia facility, Plaintiff provided food services

with a copy of his diet detail and was immediately provided low sodium meals. Plaintiff received low

sodium meals through the noon meal on May 18, 2004. However, when Plaintiff received his evening

meal on May 18, 2004, he was informed that Defendant Lewis had instructed food services "not to

prepare any more diet trays for Plaintiff."

When asked about this matter, Defendant Lewis stated that "he [would] not honor a detail

from another facility." Prison officials again provided Plaintiff with low sodium meals beginning on

May 28, 2004. Plaintiff asserts that during the ten days that he was deprived of a low sodium diet, he

"suffered excruciating headaches, blurry vision, and dizziness from eating the food off the regular line

and by the fifth day he had to stop eating much of the food to ease the pain." Plaintiff allegedly lost ten

pounds during this time. Plaintiff asserts that Defendant Lewis' actions violated his Eighth Amendment

right to be free from cruel and unusual punishment.  Defendant Lewis moves for summary judgment as to this particular claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).  A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The analysis by which Defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

In support of his motion for summary judgment, Defendant Lewis asserts that there exists no factual dispute as to either element of the Eighth Amendment analysis. Defendant also claims that "there was not even a deprivation of low-sodium food in this case." Defendant further asserts that he is entitled to relief because Plaintiff "was not even following his low-sodium diet." The Court is not persuaded by Defendant's arguments.

With respect to the objective component of the analysis, Defendant Lewis asserts that "[h]igh blood pressure is a non-obvious medical condition that requires medical testimony to substantiate it in order to pursue an Eighth Amendment claim." While not expressly stated, Defendant seems to be arguing that he is entitled to relief because he cannot reasonably have been expected to know that Plaintiff's blood pressure was sufficiently high that Plaintiff required a special low sodium diet. This argument *might* be persuasive if Plaintiff had sought approval from Defendant Lewis for a low sodium diet. In such a circumstance, a layperson, such as Defendant Lewis, could legitimately argue that he could not reasonably be expected to recognize whether a prisoner suffered from an ailment the existence of which is not readily apparent or observable. However, Plaintiff did not seek approval from Defendant Lewis to receive a low sodium diet, but instead simply requested that Defendant Lewis comply with the direction from a licensed physician that he be provided a low sodium diet. The fact that a physician prescribed a low sodium diet for Plaintiff is sufficient to establish, on the present record, a

genuine factual dispute as to whether his medical condition (and the deprivation of the prescribed low sodium diet) was sufficiently serious to implicate the Eighth Amendment.

With respect to the subjective element, Defendant Lewis argues that he "informed the plaintiff that he needed a valid medical detail issued by ICF to receive the low-sodium diet at ICF." Defendant further asserts that "this un-rebutted evidence of [his] state of mind shows conclusively that [he] believed that a 'special accommodation' from another prison was not valid at ICF." Such hardly establishes that Defendant Lewis lacked a sufficiently culpable state of mind. This "evidence" is reasonably interpreted as establishing that Defendant Lewis decided, on his own, that he would honor only those medical directives and prescriptions issued by care providers at ICF. As the Court has previously stated, Defendant Lewis has identified no authority which supports the proposition that, consistent with the Eighth Amendment, he is entitled to pick and choose which medical orders and directives he will honor. The Court, therefore, finds that there exists a genuine factual dispute as to this element of the analysis.

Defendant next asserts that he is entitled to relief because Plaintiff was not, in fact, denied a low sodium diet. In support of this argument, Defendant has submitted an affidavit from registered dietician, Patricia Willard. (Dkt. #216, Exhibit C). In her affidavit, Willard asserts that during the relevant time periods, "there were low sodium food options available for prisoner Boles from the regular food line" and "Boles could have maintained a sodium restricted diet by making appropriate choices from the meal line."

As Plaintiff correctly notes, however, MDOC Policy Directive 04.07.101 calls into doubt this particular assertion. Specifically, this Policy Directive provides that "[p]risoners whose diet modifications cannot be adequately accommodated from the regular menu must be served meals from

individualized diet menus." MDOC Policy Directive 04.07.101 ¶ (B)(2). The parties do not appear to dispute that Plaintiff was not simply instructed to consume the low sodium offerings from the "regular food line," but was instead prescribed an individualized diet detail. In light of this Policy Directive, the Court finds that there exists a genuine factual dispute as to whether Plaintiff's dietary needs could adequately have been met by selecting low sodium items from the regular food line.

Finally, Defendant Lewis asserts that he is entitled to relief because Plaintiff "was not even following his low-sodium diet." Defendant has submitted copies of commissary receipts purporting to demonstrate that Plaintiff, between the dates of January 6, 2003, and December 29, 2005, purchased from the prison commissary large quantities of "high-sodium" food items. (Dkt. #216, Exhibit C). In her affidavit, Patricia Willard asserts that "[i]t is appropriate to remove an inmate from a special diet that he does not comply with."

While it may, in fact, be appropriate to discontinue a special diet for any inmate who fails to comply therewith, Defendant has presented no evidence that his decision to not comply with a valid medical detail was motivated by his belief that Plaintiff had failed to comply with his special diet. Moreover, Plaintiff has submitted an affidavit in which he asserts that his "store purchases were being checked at ICF by health service and Dietician Willard on a regular basis and no store purchasing violations was ever found by them." (Dkt. #235). Plaintiff also asserts that he purchased "coffee, cigarettes and food items" to help support his cousin who "did not have money." *Id.* Thus, even assuming the relevancy of whether Plaintiff was following his low sodium diet, there remains a genuine factual dispute regarding such.[2]

---

[2] The Court also notes that the receipts submitted by Defendant *all* indicate that the items in question were purchased from the Pine River Correctional Facility. Plaintiff, however, was not incarcerated at this facility during the time period in question. While not dispositive to the Court's analysis, this anomaly raises a question as to the authenticity and/or accuracy of the receipts in question.

In sum, for the reasons articulated above, the undersigned recommends that Defendant Lewis' motion for summary judgment be denied.[3]

## II.  Eighth Amendment Claims Against Defendant Richardson

In his complaint, Plaintiff asserts that from October 2005 through January 17, 2006, he was allowed to use the bathroom during count.  Beginning on January 18, 2006, prison officials, acting pursuant to a change in policy, no longer permitted inmates to use the bathroom during count.  Plaintiff asserts that on ten occasions between January 21, 2006, and February 24, 2006, he urinated on himself because Defendant Richardson denied his requests to use the bathroom during count.  Plaintiff asserts that Defendant Richardson's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.  Defendant asserts that he is entitled to relief because "there is no evidence that the plaintiff suffered from any serious medical condition requiring constant restroom access."  Defendant further asserts that the record is devoid of evidence that he "had any knowledge" of Plaintiff's alleged condition.

With respect to the objective element of the analysis, Plaintiff must establish that Defendant Richardson's refusal to allow him to use the bathroom during count subjected him to a substantial risk of serious harm.  In other words, Plaintiff must demonstrate that his medical condition required that he be afforded an accommodation to use the bathroom whenever he chose, rather than simply waiting the short period of time it took to conduct the prisoner count.  Despite having more than

---

[3]  Defendant Lewis asserts that he is entitled to qualified immunity as to this claim.  Plaintiff's allegations state a claim for violation of his right to be free from cruel and unusual punishment.  Defendant has failed to present evidence demonstrating the absence of a genuine factual dispute on this point.  The right in question was clearly established long before the conduct giving rise to this action.  Accordingly, the undersigned recommends that Defendant Lewis is not entitled to qualified immunity.  *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

three years to conduct discovery and gather evidence in support of his claims, Plaintiff has presented no evidence that such was the case.

       The Court recognizes that Plaintiff has submitted an affidavit in which he asserts that he consulted with a physician in August 2005, who allegedly instructed Plaintiff to "drink more than the normal amount of water to ease the side effects of [his Hepatitis C] medicine and treatment." (Dkt. #83 at ¶ 22). While this evidence may demonstrate that Plaintiff was suffering from some impairment that necessitated medical treatment, it hardly supports Plaintiff's position that his condition required that he be permitted to use the bathroom whenever he chose, rather than simply waiting the short period of time it took to conduct the prisoner count. The Court concludes, therefore, that Plaintiff cannot satisfy the objective element of the analysis. Furthermore, even if Plaintiff could satisfy this particular element of the analysis, the result would be the same as Plaintiff is likewise unable to satisfy the subjective element.

       To satisfy the subjective prong of the analysis, Plaintiff must demonstrate that Defendant Richardson knew of and disregarded an "excessive risk" to his health or safety. In other words, Plaintiff must demonstrate that Defendant knew that failure to afford him the requested accommodation would subject him to an excessive risk of harm. Even if the Court assumes that Plaintiff could satisfy the objective element of the analysis, Plaintiff, despite having more than three years to conduct discovery, has presented no evidence that Defendant Richardson knew (or reasonably should have known) that Plaintiff's medical condition required that he be permitted to use the bathroom whenever he chose. In this respect, the Court notes that Plaintiff's request for a medical detail to use the bathroom during prisoner count was rejected by medical staff. Stated simply, the Court, in the absence of evidence suggesting otherwise, fails to discern how a prison guard could be expected to know that Plaintiff's

medical condition mandated that he be afforded an accommodation that Plaintiff's professional care providers refused to prescribe.

In support of his position, Plaintiff relies on the Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730 (2002). The Court finds Plaintiff's reliance on this case to be misplaced. In that case, Larry Hope asserted that he had been "subjected to cruel and unusual punishment when prison guards twice handcuffed him to a hitching post to sanction him for disruptive conduct." The Eleventh Circuit held that the prison guards were entitled to qualified immunity, a determination which the Supreme Court undertook to examine. Before analyzing the legal question before it, the Court outlined the relevant facts thusly:

> In 1995, Alabama was the only State that followed the practice of chaining inmates to one another in work squads. It was also the only State that handcuffed prisoners to "hitching posts" if they either refused to work or otherwise disrupted work squads. Hope was handcuffed to a hitching post on two occasions. On May 11, 1995, while Hope was working in a chain gang near an interstate highway, he got into an argument with another inmate. Both men were taken back to the Limestone prison and handcuffed to a hitching post. Hope was released two hours later, after the guard captain determined that the altercation had been caused by the other inmate. During his two hours on the post, Hope was offered drinking water and a bathroom break every 15 minutes, and his responses to these offers were recorded on an activity log. Because he was only slightly taller than the hitching post, his arms were above shoulder height and grew tired from being handcuffed so high. Whenever he tried moving his arms to improve his circulation, the handcuffs cut into his wrists, causing pain and discomfort.
>
> On June 7, 1995, Hope was punished more severely. He took a nap during the morning bus ride to the chain gang's worksite, and when it arrived he was less than prompt in responding to an order to get off the bus. An exchange of vulgar remarks led to a wrestling match with a guard. Four other guards intervened, subdued Hope, handcuffed him, placed him in leg irons and transported him back to the prison where he was put on the hitching post. The guards made him take off his shirt, and he remained shirtless all day while the sun burned his skin. He remained attached to the post for approximately seven hours. During this 7-hour

period, he was given water only once or twice and was given no bathroom breaks. At one point, a guard taunted Hope about his thirst. According to Hope's affidavit: "[The guard] first gave water to some dogs, then brought the water cooler closer to me, removed its lid, and kicked the cooler over, spilling the water onto the ground."

*Id.* at 733-35 (internal footnotes and citations omitted).

In finding that the prison guards were not entitled to qualified immunity, the *Hope* Court first determined that Hope's allegations stated a claim for violation of the Eighth Amendment. *Id.* at 736-38. As Plaintiff correctly notes, in making this finding, the Court observed that Hope had allegedly suffered a "deprivation of bathroom breaks that created a risk of particular discomfort and humiliation." *Id.* at 738. Plaintiff's citation to the *Hope* decision is, however, notably incomplete. The entire passage reads as follows:

As the facts are alleged by Hope, the Eighth Amendment violation is obvious. Any safety concerns had long since abated by the time petitioner was handcuffed to the hitching post because Hope had already been subdued, handcuffed, placed in leg irons, and transported back to the prison. He was separated from his work squad and not given the opportunity to return to work. Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation. The use of the hitching post under these circumstances violated the "basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man." This punitive treatment amounts to gratuitous infliction of "wanton and unnecessary" pain that our precedent clearly prohibits.

*Id.* at 738 (internal citations and footnotes omitted).

As the entire passage makes clear, it was not simply the "deprivation of bathroom breaks," but rather the "use of the hitching post," that stated an Eighth Amendment claim. Thus, Plaintiff's reliance on the *Hope* decision suffers from two shortcomings. First, the facts in the *Hope* case

are so much more egregious than the facts alleged by Plaintiff as to make any reliance on *Hope* unpersuasive. *See, e.g., Walters v. Curtin*, 2008 WL 4756022 at *1 (W.D. Mich., Oct. 23, 2008) (Maloney, C.J.) (recognizing the inapplicability of *Hope* where prisoner alleged only that he had been deprived of bathroom access for 90 minutes). Furthermore, the question before the *Hope* Court was, in part, whether Hope's allegations stated an Eighth Amendment claim. By contrast, the question presently before this Court is whether Defendant Richardson is entitled to summary judgment. For the reasons articulated herein, the Court finds that Plaintiff has failed to present evidence demonstrating the existence of a genuine factual dispute as to this particular claim. Accordingly, the undersigned recommends that Defendant Richardson is entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

III.        **Eighth Amendment Claims against Defendants Case and Christiansen**

As noted above, Plaintiff asserts that on February 10, 2005, he was served meat loaf, which he gave to another prisoner. When questioned by Defendant Case about the matter, Plaintiff stated that he could give away food that he was not going to eat. Defendant Case then discussed the matter with Defendant Christiansen, who subsequently requested that Plaintiff be removed from his low sodium diet detail because he traded items from his low sodium diet tray for items from a regular tray. As a result of Defendant Christiansen's memo, Defendant Migliorino discontinued Plaintiff's low sodium diet detail. Plaintiff asserts that this removal from the low sodium diet detail violated his Eighth Amendment rights. Defendant Case and Christiansen assert that they are entitled to summary judgment.

To prevail on this claim, Plaintiff must establish that Defendants' conduct was sufficiently serious as to implicate the Eighth Amendment. While the decision to remove Plaintiff from

the low sodium diet detail may implicate the Eighth Amendment, neither Defendant Christiansen nor Defendant Case made the decision to remove Plaintiff from the low sodium diet detail. According to Plaintiff, that decision was made by Defendant Migliorino. Accordingly, the undersigned recommends that Defendants Case and Christiansen are entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

**IV.        Retaliation Claim against Defendant Case**

As noted above, Plaintiff asserts that he was served "processed turkey" on December 22, 2004. Plaintiff asserts that Defendant Case directed that he be given this item. Plaintiff filed a grievance regarding this incident three days later. On January 11, 2005, Defendant Case charged Plaintiff with disobeying a direct order, a major misconduct violation. Plaintiff alleges that Defendant acted in retaliation for Plaintiff having filed a grievance against Case for serving Plaintiff processed turkey on December 22, 2004. Defendant Case asserts that he is entitled to summary judgment as to this claim.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

1.     Protected Conduct

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). This protection also guarantees to inmates the right to file non-frivolous grievances. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (because a prisoner's constitutional right to access the courts extends to established prison grievance procedures, filing non-frivolous grievances constitutes protected conduct); *Eby*, 481 F.3d at 440 (same). Plaintiff asserts that Defendant Case retaliated against him because he filed a grievance against him. Defendant has not asserted that the grievance in question was frivolous. Defendant has failed, therefore, to demonstrate that Plaintiff was not engaged in protected conduct.

2.     Adverse Action Which Would Deter a Person of Ordinary Firmness

As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* The Court finds that charging a prisoner with a misconduct violation is neither an inconsequential nor de minimis action. Accordingly, the Court finds that there exist unresolved questions of fact regarding this particular element of the analysis.

### 3. Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Defendant Case has submitted neither evidence nor argument with respect to this element of the analysis.[4] Accordingly, the undersigned recommends that Defendant Case's motion for summary judgment as to this claim be denied.[5]

---

[4] Defendant Case appears to be confused about the basis for this particular claim. Defendant asserts in his brief that he is entitled to relief because "it was Defendant Christiansen that engaged in the complained-of act," referring to the memorandum Defendant Christiansen wrote to health care. As previously noted, however, Plaintiff's retaliation claim against Defendant Case is premised on a separate incident.

[5] Defendant Case asserts that he is entitled to qualified immunity as to this claim. Plaintiff's allegations state a claim for violation of his right to be free from unlawful retaliation. Defendant has failed to present evidence demonstrating the absence of a genuine factual dispute on this point. The right in question was clearly established long before the conduct giving rise to this action. Accordingly, the undersigned recommends that Defendant Case is not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

**V.       Retaliation Claims against Defendant Richardson**

As detailed above, Plaintiff asserts that Defendant Richardson charged him with major misconduct violations on February 28, 2006 and March 1, 2006.  Plaintiff asserts that these misconduct violations were issued for improper retaliatory purposes.   Plaintiff also asserts that Defendant Richardson denied his requests to use the bathroom during count for improper retaliatory reasons. Defendant Richardson asserts that he is entitled to summary judgment as to these claims.

1.       Bathroom usage Issue

Plaintiff asserts that Defendant Richardson denied his requests to use the bathroom during count as retaliation for Plaintiff having filed a grievance on January 22, 2006, against Richardson for denying Plaintiff's requests to go to the bathroom during prisoner count.

Defendant does not assert that Plaintiff was not engaged in protected conduct.  As for whether Defendant Richardson's alleged conduct was sufficient to deter a person of ordinary firmness from engaging in protected conduct, the Court finds that, considering the evidence thus far presented, such presents a legitimate factual dispute.  As for the third prong of the analysis, the allegations in Plaintiff's verified complaint (and affidavits) articulate a chronology of events from which retaliation may plausibly be inferred.  Furthermore, Defendant has submitted no evidence that he would have taken the same action even had Plaintiff not submitted the grievance in question.  The Court, therefore, recommends that Defendant Richardson's motion for summary judgment be denied as to this claim.[6]

---

[6] Defendant Richardson asserts that he is entitled to qualified immunity as to this claim.  Plaintiff's allegations state a claim for violation of his right to be free from unlawful retaliation.  Defendant has failed to present evidence demonstrating the absence of a genuine factual dispute on this point.  The right in question was clearly established long before the conduct giving rise to this action.  Accordingly, the undersigned recommends that Defendant Richardson is not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

2.    February 28, 2006 and March 1, 2006 Misconduct Charges

In his complaint, Plaintiff asserts that on February 28, 2006, and March 1, 2006, Defendant Richardson falsely charged him with being "out of place." (Dkt. #1 at ¶¶ 130, 137-38). Plaintiff asserts that Richardson charged him with these two misconduct violations in retaliation for a January 22, 2006 grievance which Plaintiff filed concerning Richardson's refusal to allow him to use the bathroom during count, as well as the fact that this issue was resolved in Plaintiff's favor. (Dkt. #83 at ¶ 53; Dkt. #1, Exhibit 5).

Defendant Richardson previously moved for summary judgment as to this claim. Finding that Defendant "has failed to demonstrate that he 'would have taken the same action even without the protected activity,'" the undersigned recommended that Defendant's motion for summary judgment be denied. (Dkt. #113 at 20-21). This recommendation was adopted by the Honorable Richard Alan Enslen. (Dkt. #123). Defendant has failed to submit any additional evidence that merits a different conclusion. The undersigned, therefore, recommends that Defendant's motion for summary judgment be denied as to these claims.[7]

---

[7] Defendant Richardson asserts that he is entitled to qualified immunity as to this claim. Plaintiff's allegations state a claim for violation of his right to be free from unlawful retaliation. Defendant has failed to present evidence demonstrating the absence of a genuine factual dispute on this point. The right in question was clearly established long before the conduct giving rise to this action. Accordingly, the undersigned recommends that Defendant Richardson is not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

**CONCLUSION**

As discussed herein, the undersigned recommends that <u>Defendants Lewis, Case, Christiansen, and Richardson's Motion for Summary Judgment</u>, (dkt. #215), be **granted in part and denied in part**. Specifically, the undersigned recommends that Defendants Richardson, Case, and Christiansen are entitled to summary judgment as to Plaintiff's Eighth Amendment claims, but that otherwise Defendants' motion for summary judgment be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: June 22, 2010          /s/ Ellen S. Carmody_____
                             ELLEN S. CARMODY
                             United States Magistrate Judge